UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYELLE D. POFF, | : | 1:13-CV-03066 |
| | : | |
| Plaintiff | : | (Magistrate Judge Schwab) |
| | : | |
| v. | : | |
| | : | |
| PRIME CARE MEDICAL, INC., | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM
October 1, 2015

## I. STATEMENT OF FACTS AND OF THE CASE.

### A. Procedural History.

Joyelle D. Poff ("Poff"), a licensed practical nurse ("LPN"), sued her former employer, Prime Care Medical, Inc. ("Prime Care"), for violating the Family and Medical Leave Act ("FMLA" or "Act"), 29 U.S.C. § 2601 et seq., by terminating her employment on August 8, 2013, after she requested medical leave for a serious health condition.[1] At the close of the liability phase of the bench trial held May 4-6, 2015, the Court found in Poff's favor on liability. In that regard, the Court concluded that Poff left work early on July 25, 2013, due to a serious health condition, that she provided Prime Care with adequate notice of her need to take

---

[1] The procedural history of the case is fully set forth in the Court's Memorandum on Poff's motion for summary judgment. *See Doc.* 25.

FMLA leave on July 25, 2013, and that Prime Care violated the FMLA by terminating her employment.[2]

The bench trial then proceeded on Poff's claims for damages, specifically, her claims that she is entitled to an award of $45,313 in back pay, $4,059.71 in medical expenses she incurred due to lost health insurance, and a front pay award of $15,086 per year until she reaches the age of 65. The record is now closed, and the Court is prepared to render its judgment. This Opinion constitutes the Court's findings of fact and conclusions of law made pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

**B. Factual Findings.**

With respect to the issues of compensatory damages and the affirmative defense of failure to mitigate, we make the following findings of fact.[3]

---

2    *See* Trial Transcript ("Tr. Trans."), May 6, 2015 at 3-6.

3    In making these findings of fact, we rely on the testimony elicited at the trial and the exhibits submitted by the parties. We have examined the evidence that has been made part of the record and reflected upon the credibility and reliability of the witnesses' testimony. Where testimony or a document is quoted directly, the findings of fact include a citation to the record. These citations are intended merely as a guide for the reader. Further, while some findings of fact are based solely upon the record, many are based at least in part upon the reasonable inferences drawn from the record. To the extent that any of the proposed findings of fact submitted by the parties are inconsistent with findings set forth herein, those proposed findings are rejected.

1.     Prime Care, a privately owned, nationally accredited, correctional health care company based in Harrisburg, Pennsylvania, provides medical services to juvenile correctional facilities, jails and prisons throughout the Northeastern United States.

2.     Prime Care operates in approximately 62-65 locations and employs approximately 950 to 1,000 employees.

3.     Prime Care contracted with York County in October of 2006 to provide medical services to inmates at the York County Prison.

4.     Prime Care hired Poff on April 29, 2009, as a full-time LPN.   During her entire employment with Prime Care, Poff was assigned to work at the York County Prison.

5.     Poff was a member of the International Brotherhood of Teamsters Local Union 776 and worked under the union's contract with Prime Care.

6.     Dr. Nicholas J. Spagnola, D.O., a 1981 graduate of the Philadelphia College of Osteopathic Medicine, is board certified in family practice and has been practicing medicine in York, Pennsylvania for over thirty years.

7.     Poff began treating with Dr. Spagnola on October 29, 2010.

8.     Todd Haskins ("Haskins") is the Vice President of Operations at Prime

Care and is in charge of the York County Prison.

9.    Mike Baldwin ("Mike Baldwin") is a Prime Care employee, who at all relevant times to this litigation was the Assistant Director of Nursing at the York County Prison.

10.    Marcy Hoffman-Schlegel ("Hoffman-Schlegel") has been the Junior Vice President of Human Resources for Prime Care since 2006. She is responsible for FMLA issues.

11.    Hoffman-Schlegel has no specific training in the FMLA.

12.    Mark Andreozzi ("Andreozzi"), Prime Care's current Director of Employee Relations/Work Place Safety, was formerly, and at all times relevant to this litigation, an Employee Relations Specialist for Prime Care and reported to Hoffman-Schlegel.

13.    Andreozzi has no specific training in the FMLA.

14.    On October 29, 2010, Dr. Spagnola diagnosed Poff with paroxysmal tachycardia, an irregular heartbeat condition, triggered by, among other things, stress, which can cause a person to be dizzy and unable to function for a couple of hours or an entire day.

15.    On Thursday, July 25, 2013, Poff arrived at work at her normal start

time and punched in at 6:34 a.m. Within about twenty minutes of punching in at work, Poff informed Mae Baldwin ("Mae Baldwin") that she was feeling ill and needed to go home.

16.     Poff did not tell Mae Baldwin that she was suffering from tachycardia or any other heart ailment.

17.     Mae Baldwin spoke with the on-call administrator for July 25, 2103, Brad Jones, and told him that Poff had to leave work because she was sick.

18.     On July 25, 2013, Mike Baldwin started his shift at 8:00 a.m. and was informed that Poff had left around 7:00 a.m.

19.     Mike Baldwin was aware on July 25, 2013, that Poff had left work early because she was ill.

20.     On July 25, 2013, at 5:52 p.m., Poff sent an email to Hoffman-Schlegel, stating "Hi marcy, wondering if you could email [me] fmla papers for my doctor to fill out." (Joint Exhibit 9).

21.     On July 25, 2013, at 5:52 p.m., Hoffman-Schlegel responded to Poff, via return email stating "No problem. [I'll] get them out to you tomorrow. Is that ok?" *Id.*

22.     On July 26, 2013 at 9:48 a.m., Hoffman-Schlegel provided Poff the

FMLA forms via email attachment stating "Attached are the papers you requested. Do you need short-term disability papers as well?" *Id.*

23.     On Friday, July 26, 2013, at 9:58 a.m., Poff responded via email that she did not need short-term disability papers. *Id.*

24.     Poff did not notify Hoffman-Schlegel that she left work early on July 25, 2013.

25.     On Monday, July 29, 2013, Poff had an appointment with Dr. Spagnola, at which time Poff gave Dr. Spagnola the Certification of Health Care Provider for Employee's Serious Health Condition (Family Medical Leave Act) form ("medical certification form")

26.     On Monday, July 29, 2013, Dr. Spagnola completed the medical certification form for Poff and faxed it to Prime Care.

27.     Prime Care received Poff's FMLA medical certification form completed by Dr. Spagnola on July 29, 2013.

28.     Hoffman-Schlegel reviewed Poff's FMLA form on July 29, 2013.

29.     In addition to other responses, Dr. Spagnola wrote on Poff's medical certification form that the date Poff's condition commenced was within the "past couple of years," and that he had treated her "every 1 to 2 months" with

the most recent treatment on "7/29/2013."   (Joint Exhibit 10).

30.     Because Poff's leaving work early on July 25, 2013 was considered an absence occurrence pursuant to the union contract, and because such absence was Poff's eighth absence occurrence, the administrative assistant who documents employees' absences completed a Notification to Human Resources Form ("Notification") on August 6, 2013, documenting the absence and recommending that Poff should be terminated.

31.     The Notification was emailed to Prime Care's Human Resources Department in Harrisburg and to Mike Baldwin.

32.     On August 6, 2013, Mike Baldwin met with Poff and union steward, Laura Skaggs ("Skaggs"), at which time Mike Baldwin gave Poff and Skaggs the Notification regarding Poff's absence occurrence for July 25, 2013. Skaggs wrote on the Notification that a grievance was pending and that "FMLA papers [were] completed" in the comments section.   Poff, Skaggs, and Mike Baldwin discussed that Poff's FMLA papers had been sent to the corporate office.   (Joint Exhibit 8).

33.     Following this discussion, Mike Baldwin contacted Hoffman-Schlegel and informed her of the discussion and that Poff's FMLA application was

pending.

34.     Mike Baldwin forwarded the Notification to the Human Resources Department.

35.     Prior to August 7, 2013, Andreozzi was in receipt of the August 6, 2013 Notification regarding Poff's absence occurrence for July 25, 2013.

36.     On August 7, 2013, at 10:50 a.m., Mike Baldwin sent an email to, others not relevant here, and Haskins, Hoffman-Schlegel and Andreozzi, discussing Poff's attendance and disciplinary issues.   (Exhibit P4).

37.     Haskins responded to all of the email recipients at 2:42 p.m. on August 7, 2013, asking Andreozzi "What is the story here?"   *Id.*

38.     On August 7, 2013, at 3:57 p.m., Andreozzi replied to all of the email recipients stating:

> At present, the paperwork confirming the completion of the MOU has not been turned in properly to corporate nor could it be located by Mike or the Union.   Even if we did have the paperwork the completion of the MOU was after the date of the event triggering the termination.   The FMLA paperwork does not include a back date so I do not believe that would help her cause either, however, Marcy could better explain that circumstance.   I think that we are ok to terminate her and in fact should because of the recent termination of Brian.   She will file a grievance which I do not believe will go anywhere other than the grievance hearing.   Those are my thoughts.

*Id*.

39.     Haskins was aware that the Human Resources Department was in receipt of Poff's FMLA application.

40.     Haskins did not review Poff's FMLA application.

41.     Mike Baldwin terminated Poff's employment at Prime Care on August 8, 2013.

42.     No one at Prime Care ever responded to Poff's FMLA application.

43.     A few months after her termination and continuing until June of 2014, Poff bought and sold items on eBay and Craigslist in order to gain income.

44.     Poff looked into opening an assisted living facility for women recovering from drug addiction but could not obtain financing.  She also applied for a couple of positions in hospice nursing but never heard back regarding them.

45.     After her termination from Prime Care, Poff had concerns about continuing to work in the medical profession due to her heart condition and about not being immediately eligible for sick leave and FMLA at a new job.

46.     Mr. Leslie, Prime Care's Vocational Expert, testified that 130 LPN nursing job openings existed in the local area at the time he conducted his

research.

47.    In June of 2014, Poff, along with her son, began working for Cash Now, as an independent contractor, remodeling homes.

48.    As an independent contractor, Poff sets her own schedule and can take off from work if she needs to for health reasons.

49.    As an independent contractor, Poff works six or seven days a week, and her business is very busy.

50.    Poff earned an average of $39,854 gross per year at Prime Care.

51.    From August 8, 2013 through May 4, 2015, Poff's gross wage loss was $69,225.

52.    From August 8, 2013 through May 4, 2015, Poff's gross earnings from her online sales through Craigslist and eBay and from her home remodeling business with Cash Now totaled $23,912.

53.    Poff incurred medical expenses in the amount of $4,059.71 from August 8, 2013 through May 4, 2015, expenses that would otherwise have been covered by her health insurance with Prime Care, minus any applicable copayments.

## II.    DISCUSSION AND CONCLUSIONS OF LAW.

### A. Back Pay and Mitigation of Damages.

The FMLA provides that any employer who violates the Act shall be liable to any eligible employee affected by such violation for back pay, interest and may be liable, in certain circumstances, for statutory liquidated damages. 29 U.S.C. § 2617 (a)(1).    An employer who violates the Act is liable:

(A) For damages equal to –

(i) the amount of –

(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

(II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;

(ii) interest on the amount described in clause (i) calculated at the prevailing rate; and

(iii) an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability

> to the amount and interest determined under clauses (i) and (ii),
> respectively; and
>
> (B) for such equitable relief as may be appropriate, including
> employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1).

The parties do not contest that Prime Care is an "employer" and that, as of July 2013, Poff was an "eligible employee" as those terms are defined under the FMLA and its regulations.  29 U.S.C. § 2611.  Poff seeks $45,313 in back pay to compensate her for the difference between the wages and other compensation she would have earned at Prime Care from the date she was terminated through May 4, 2015, the date of trial, and her actual earnings during the same period. Additionally, she seeks compensation for the $4,059.71 she incurred in medical expenses since her termination.  In response, Prime Care asserts that Poff should be denied all back pay and other compensation because she failed to properly mitigate her damages.  Specifically, Prime Care asserts that Poff did not exercise reasonable diligence in securing employment as an LPN.

An employee who is wrongfully terminated has an affirmative duty to use reasonable diligence to mitigate his or her damages.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982).  The issue of mitigation and the employee's use of

reasonable diligence is a question for the trier of fact. *Smith v. Great Am. Rest.*, 969 F.2d 430, 439 (7th Cir. 1992). The burden, however, of proving that a plaintiff failed to exercise reasonable diligence in finding other employment rests with the employer. *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1004-05 (3d Cir.1988). Self-employment may satisfy the duty to mitigate damages provided such employment was a reasonable alternative under the circumstances. *Id.* at 1005 (stating that the "threshold question" was whether the choice to start a business "was a reasonable method of mitigating damages); *see also Taylor v. Cent. Pa. Drug and Alcohol Servs. Corp.,* 890 F. Supp. 360 (M.D. Pa. 1995) (instructing that the burden to prove that self-employment was not reasonable falls to the employer); *Smith*, 969 F.2d at 438 ("The notion that starting one's own business cannot constitute comparable employment for mitigation purposes not only lacks support in the cases, but has a distinctly un-American ring."). The choice to become self-employed does not necessarily indicate a lack of reasonable diligence. *Taylor*, 890 F. Supp. at 372; *see also Serricchio v. Wachovia Sec., LLC*, 606 F. Supp. 2d 256 (D. Conn. 2009); *Smith*, 969 F.2d at 433–34 (finding that the plaintiff's efforts in opening and operating her own restaurant were serious and in fact much greater than

required by an ordinary full-time job). *But see Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461 (5th Cir.1989) (finding that the plaintiff's efforts in opening up a flea-market business was never more than a part-time job).

Here, we find that Prime Care has not met its burden of establishing that Poff's decision to earn a living by initially selling items online and eventually going into the home remodeling business with her son was not a reasonable alternative to continuing in a nursing career given her medical history. It is uncontested that Poff's efforts in starting her own business were serious and that her desire to remain in the home remodeling business was sincere. She testified credibly that she enjoyed the work and that it provided her flexibility should she experience an episode of paroxysmal tachycardia. We are further persuaded that Poff's prospects in the home remodeling business are presently favorable, as she credibly testified, without contest, that her business was doing well and that she was working full-time six to seven days a week. Although Mr. Leslie provided testimony regarding the number of nursing position openings, Prime Care did not show that Poff's decision to become self-employed was unreasonable, half-hearted, part-time, or not undertaken in good faith. Further, Prime Care offered no evidence refuting Poff's valuation of her earnings post termination or the amount

of her medical bills, except testimony that such bills would be subject to co-payments if they were covered by Prime Care's health insurance.

Thus, we find that Poff made a reasonable effort to mitigate her damages following her termination. Pursuant to the statutory mandate, back pay in the amount of $45,313 and compensation for medical expenses she incurred in the amount of $4,059.71, less any applicable co-payments, will be assessed and awarded in this case. In addition, the Court finds that it is appropriate to award annual interest on the back pay and compensation for medical expenses from the date of Poff's termination, August 8, 2013, until the date of this Memorandum. The parties shall have thirty days to supplement the record to provide the court with the sum total of medical expenses of $4,059.71, less applicable co-payments.4 The parties shall further advise the court of the prevailing interest rate they agree to utilize in order to calculate the interest award. *See Hosler v. Jay Fulkroad and Sons*, 1:13-CV-1153, 2015 WL 3865877, at *12 (M.D. Pa. June 23, 2015) (awarding the IRS prime rate of 3.25% as of the time of jury's award as the prevailing interest rate).

---

4      Although the parties introduced evidence at trial that Poff's medical expenses were subject to co-payments, the Court is unable to ascertain which specific co-payments are applicable to the medical expenses Poff incurred.

**B. Liquidated Damages.**

Poff also seeks liquidated damages, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii). Indeed, a strong presumption exists that an employer who violates the FMLA shall be liable "for an additional amount as liquidated damages equal to the sum of lost wages and benefits award and any interest on that award." *Diaz v. Saucon Valley Manor, Inc.*, Civ. A. No. 12-0433, 2013 WL 4564300, at *2 (E.D. Pa. Oct. 31, 2013) (citing 29 U.S.C. § 2617(a)(1)). While the liquidated damages decision is committed to the court's discretion, such damages may only be disallowed if the employer proves its FMLA violation "was in good faith" and that it had "reasonable grounds for believing" that its violation did not run afoul of the FMLA. *Id.* (citing 29 U.S.C. § 2617 (a)(1)(A)(iii)); *see also Persky v. Cendant Corp.*, 547 F. Supp. 2d 152, 164 (D. Conn. 2008) (referring to the FMLA presumption that liquidated damages should be awarded as a matter of course unless the employer succeeds on the good faith exception); *Cooper v. Fulton Cnty., Ga.*, 458 F.3d 1282, 1287 (11th Cir. 2006) ("Liquidated damages are awarded presumptively to an employee when an employer violates the FMLA, unless the employer demonstrates that its violation was in good faith and that it had a reasonable basis for believing that its conduct was not in violation of the FMLA.");

*Thorson v. Gemini, Inc.,* 205 F.3d 370, 383 (8th Cir. 2000) (referring to the "mandatory call for liquidated damages"); *Reich v. S. New England Telecomms. Corp.,* 121 F.3d 58, 71 (2d Cir. 1979) ("double damages are the norm, single damages the exception."); *Shea v. Galaxie Lumber & Constr. Co.,* 152 F.3d 729, 733 (7th Cir. 1998) ("[T]hat discretion must be exercised consistently with the strong presumption under the statute in favor of doubling.")

An affected employee is not required to establish willfulness in order to be awarded liquidated damages under the FMLA. *Bowyer v. Dish Network, LLC, et al.,* Civ. A. No. 08-1496, 2010 WL 629830, at *6 (W.D. Pa. Feb. 19, 2010). Rather, "[t]he exception to the general rule awarding mandatory liquidated damages requires the employer to come forth with evidence of both 'good faith' and reasonableness in its actions." *Id.* at *7. The employer must further establish that it took affirmative steps to ascertain the requirements of the Act, honestly intended to follow such requirements, but regardless failed to comply. *Id.*; *Diaz,* 2013 WL 4564300, at *2. Particularly relevant here, "[g]ood faith requires 'some duty to investigate potential liability.'" *Bowyer,* 2010 WL 629830, at *7 (quoting *McGuire v. Hillsborough Cnty.,* 511 F. Supp. 2d 1211, 1214 (M.D. Fla. 2007)); *see also Thorson v. Geminin, Inc.* 96 F. Supp.

2d 882, 891 (N.D. Iowa 1999) ("Good faith required that an employer first take active steps to ascertain the dictates of the law and then move to comply with them."); *Rigel v. Wilks*, Civ. A. No. 1:03-cv-971, 2006 WL 3831384, at *13-14 (M.D. Pa. Dec. 28, 2006) ("An employer's understanding of the FMLA and its related regulations are important in discerning whether it 'knew or showed reckless disregard' for whether it was violating the statute.")

The evidence at trial established that Prime Care failed to adequately train its management employees about employees' rights and the employer's duty of inquiry under the FMLA. Ms. Hoffman-Schlegel, although familiar with the FMLA through periodicals, "some seminars," and "a couple of conferences," had no specific training in the FMLA. Mr. Andreozzi, who was also involved in the decision to terminate Ms. Poff's employment, also had no formal training in the FMLA. While understandably focused on Poff's absenteeism, neither Hoffman-Schlegel, Andreozzi, nor Haskins appear to have discussed or investigated whether their decision to terminate Poff would run afoul of the FMLA. Further, there was no evidence that anyone from this management group sought legal counsel about the termination and FMLA implications. *Pagan-Colon v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 15 (1st Cir. 2012)

("An employer may advance its good faith and reasonable grounds showings by demonstrating that it sought legal advice about its obligations under the FMLA"). Most significantly, Hoffman-Schlegel misread the medical certification form as only pertaining to future events and did not ascertain that the form plainly stated that Poff had been dealing with paroxysmal tachycardia for years and had treated with Dr. Spagnola as recently as July 29, 2013. As a result, Hoffman-Schlegel did no research as to whether Poff's July 25, 2013 absence was an FMLA-qualifying event and whether the absence should have been retroactively designated as FMLA leave. *See* 29 C.F.R. § 825.301 (d).[5]

Thus, Prime Care abrogated its duty to act in good faith and take affirmative steps to inquire into the FMLA's statutory and regulatory requirements as such related to Poff's situation. Prime Care failed to carry the heavy burden necessary to avoid liquidated damages; consequently Poff is entitled to an award of liquidated damages in an amount equal to the back pay award of $45,313, plus

---

[5] "If an employer does not designate leave as required by § 825.300, the employer may retroactively designate leave as FMLA leave with appropriate notice to the employee as required by § 825.300 provided that the employer's failure to timely designate leave does not cause harm or injury to the employee. In all cases where leave would qualify for FMLA protections, an employer and an employee can mutually agree that leave be retroactively designated as FMLA leave." 29 C.F.R. § 825.301(d).

medical expenses she incurred less applicable co-payments, plus interest at the prevailing rate from the date of Poff's termination, August 8, 2013 until the date of this Memorandum. As with the back pay award, the parties shall have thirty days to supplement the record to provide the court with the prevailing interest rate they agree to utilize in order to calculate the interest award on this liquidated damages award.

### C.  Front Pay.

Poff further seeks front pay in the amount of $15,086 per year until she is 65 years old. Prime Care argues against such an award, stressing that Poff failed to introduce any expert testimony on the issue and failed to reduce the request to a present value calculation.

"Front pay is an alternative to the traditional equitable remedy of reinstatement, and is appropriate where there is irreparable animosity between the parties, or where a comparable position no longer exists." *Brown v. Nutrition Mgmt. Servs. Co.*, Civ. A. No. 06-2034, 2010 WL 2902557, at *2 (E.D. Pa. July 22, 2010) (citing *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 86 (3d Cir. 2009)). Front pay reestablishes the employee's place in the job market following an employer's unlawful employment law violation, but does not "'guarantee every

claimant ... an annuity to age 70.'" *Id.* (quoting *Anastasio v. Schering Corp.*, 838 F.2d 701, 709 (3d Cir. 1988)). Awards of front pay, however, are partially speculative since "they necessarily rest upon predictions and assumptions about a plaintiff's longevity, the likely duration of any future employment, the continued viability of the employer, ongoing efforts at mitigation, and countless other factors." *Dollar v. Smithway Motor Xpress, Inc.* 710 F.3d 798, 809 (8th Cir. 2013) (citing *Mathieu v. Gopher News Co.,* 273 F.3d 769, 782 (8th Cir. 2001) ("An award of front pay also is inherently speculative in length of time and when considering possible mitigation by reason of other employment. It is based on probabilities rather than actualities.")).

In *Hosler v. Jay Fulkroad and Sons*, Chief Magistrate Judge Carlson aptly summed up the requisite evidentiary factors for the Court to consider when exercising its discretion to award front pay:

> In determining an appropriate front-pay award, courts will consider "an employee's duty to mitigate, the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine present value of future damages, and other factors that are pertinent on prospective damage awards." *Arban v. West Publ'g Corp.*, 345 F.3d 390, 406 (6th Cir.2003). Other courts have considered factors such as the plaintiff's age, the length of her employment, the likelihood that she would have remained her position,

the length of time reasonably necessary to secure suitable employment, among other factors. *See Prine v. Sioux City Comm'ty Sch. Dist.*, 95 F.Supp.2d 1005 (N.D.Iowa 2000). The plaintiff bears the burden of coming forward with sufficient evidence to allow the Court to calculate a front-pay award. *See, e.g.*, *Excel Corp. v. Bosley*, 165 F.3d 635 (8th Cir.1999); *Barbour v. Merrill*, 48 F.3d 1270, 1279 (D.C.Cir.1995). We are also mindful that calculating and awarding front pay necessarily requires the Court to engage in a degree of speculation, but find that any such speculation should be informed by evidence actually presented. See *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782 (8th Cir.2001) ("An award of front pay also is inherently speculative in length of time and when considering possible mitigation by reason of other employment. It is based on probabilities rather than actualities.").

*Hosler,* 2015 WL 3865877 at \*13.

Here, Poff appeared as an industrious worker who is hopeful about her future in her new-found career in home remodeling. While we have found that Poff's self-employment served to mitigate her damages for her back pay award, the record is devoid of any evidence from which we can make a reasoned judgment about the long-term prospects of her remodeling business. A few months of gross income and testimony regarding initial success of a fledgling business is simply insufficient and overly speculative evidence upon which to craft a front pay award. *Id.* at \*13 ("Where awards of front pay are unduly speculative following an FMLA interference violation, courts have held that an award of front pay may be limited or

even denied entirely."). As such, Poff has not met her burden of adducing sufficient evidence to support a front pay award.

### III. ORDER

Accordingly, consistent with the findings of fact and conclusions of law set forth in this opinion, IT IS ORDERED THAT:

1. Judgment is entered for Plaintiff Joyelle D. Poff ("Poff") and against Defendant Prime Care Medical, Inc. ("Poff") in accordance with the Court's finding that Prime Care interfered with Poff's rights under the FMLA by terminating her employment on August 8, 2013, after she requested medical leave for a serious health condition.

2. Poff is entitled to back pay in the amount of $45,313 plus compensation for the $4,059.71 in medical expenses she incurred, less applicable co-payments, plus interest.

3. Poff is entitled to liquidated damages equal to the amount of the back pay award of $45,313 plus compensation for the $4,059.71 in medical expenses she incurred, less applicable co-payments, plus interest.

4. Within thirty days of the date of this Memorandum and Order the parties shall supplement the record to provide the Court with the amount equal to the medical expenses Poff incurred less the applicable co-payments. The parties shall further provide the court with the prevailing interest rate they agree to utilize in order to calculate the interest on the back pay, compensation for medical expenses and the liquidated damages awards.

5. In accordance with 29 U.S.C. § 2617 (a)(3), allowing for the plaintiff's recovery of reasonable attorneys' fees and costs, Poff shall file a motion for attorney's fees and costs, together with a supporting brief, billing records, and records of costs, on or before Friday, October 30, 2015. Further briefing on the motion shall be filed in accordance with the schedule prescribed by the Local Rules 7.6, 7.7, and 7.8.

SO ORDERED.




*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge