UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOYELLE D. POFF,                    :      1:13-CV-03066
                                    :
          Plaintiff                 :      (Magistrate Judge Schwab)
                                    :
      v.                            :
                                    :
PRIME CARE MEDICAL, INC.,           :
                                    :
          Defendant                 :

**MEMORANDUM**

## I.  Introduction.

After a nonjury trial, the Court found in favor of the plaintiff, Joyelle D. Poff,

on her claim that PrimeCare Medical, Inc., her former employer, violated the Family

and Medical Leave Act (FMLA) by terminating her employment after she requested

medical leave for a serious health condition.   Currently pending is PrimeCare's

motion to amend the Court's findings and enter a new judgment pursuant to

Fed.R.Civ.P. 52(b) and 59(a)(2) as well as Poff's motion for attorneys' fees and

costs.   For the reasons set forth below, we will deny PrimeCare's motion and grant

in part and deny in part Poff's motion.

## II.   Background and Procedural History.

In December of 2013, Poff began this action by filing a complaint naming
PrimeCare as the defendant.   Although the complaint contained only one count,
Poff claimed that PrimeCare violated the FMLA in two ways: (1) by failing to notify
her of her FMLA eligibility and (2) by terminating her because of absences from
work due to her serious health condition.   The parties consented to proceed before a
magistrate judge pursuant to 28 U.S.C. § 636(c), and after the close of discovery,
Poff filed a motion for summary judgment as to her claim that PrimeCare violated
the FMLA by terminating her employment because of absences for a serious health
condition.   Finding the question close, we denied Poff's motion for summary
judgment, and the case then proceeded to a bench trial.   At the close of the liability
phase of trial, we ruled in favor of Poff finding the she left work early on July 25,
2013, due to a serious health condition, that she provided PrimeCare with adequate
notice of her need to take FMLA leave on that date, and that PrimeCare violated the
FMLA by terminating her employment.   The trial then proceeded on the issue of
damages, and following trial, we ruled that Poff was entitled to back pay,
compensation for medical expenses less applicable co-pays, liquidated damages,

and interest.   And following additional submissions by the parties, on November 4, 2015, we entered judgment in favor of Poff in the amount of $103,606.88.

Poff filed a motion for attorneys' fees and costs and PrimeCare filed a motion to amend the Court's findings and enter a new judgment pursuant to Fed.R.Civ.P. 52(b) and 59(a)(2).   On November 25, 2015, we granted PrimeCare's unopposed motion to stay judgment and stayed execution of the judgment pending disposition of PrimeCare's motion to amend and enter a new judgment.

## III.   PrimeCare's Motion.

PrimeCare seeks to have the Court amend its findings of fact and its judgment pursuant to Fed.R.Civ.P. 52(b) and 59(a)(2).

Rule 52(b) provides that "[o]n a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings—or make additional findings—and may amend the judgment accordingly."   "The purpose of this rule is to allow the court to correct plain errors of law or fact, or, in limited situations, to allow the parties to present newly discovered evidence." *Roadmaster (USA) Corp. v. Calmodal Freight Sys., Inc.*, 153 F. App'x 827, 829 (3d Cir. 2005).   It is not, however, the purpose of this rule to "allow a party a second opportunity to prove its case." *Robertshaw v. Pudles*, No. CIV. A. 11-7353, 2014 WL 1789307,

3

at *4 (E.D. Pa. May 6, 2014) (quoting *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Plan & Trust Agreement,* 151 F.R.D. 49, 50–51 (E.D.Pa.1993)).

Similarly, Rule 59(a)(2) provides that "[a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."   "A court faced with a Rule 59(a)(2) motion after a nonjury trial 'should be most reluctant to set aside that which it has previously decided unless convinced that . . . refusal to revisit the earlier decision would work a manifest injustice.'" *Ashraf-Hassan v. Embassy of France*, No. CV 11-805 (JEB), 2016 WL 2626833, at *11 (D.D.C. May 6, 2016) (quoting *Barnes v. Alves*, 304 F.R.D. 363, 366–67 (W.D.N.Y.2015)).   "Rule 59 is not a vehicle for relitigating old issues . . . or otherwise taking a 'second bite at the apple.'" *Id.*

Contending that Poff did not provide timely notice of her need for FMLA leave for her July 25, 2013, absence, PrimeCare requests that the Court amend its findings of fact to so reflect and to enter a new judgment in favor of PrimeCare and against Poff.   In ruling at trial in favor of Poff on liability, we found that Poff had provided timely notice of her need for FMLA leave.   In this regard, we

concluded that Poff complied with the collective bargaining agreement by telling Mae Baldwin, her supervisor, that she was ill and had to leave work, and Mae Baldwin called Brad Jones, the on-call administrator, to inform him that Poff had left work early.   Further, on the same day that she left early, Poff emailed Ms. Hoffman-Schlegel to request FMLA forms.   We concluded that Poff's request for FMLA forms coupled with the fact that she left early on July 25, 2013, after informing the charge nurse that she was ill, was sufficient to put PrimeCare on notice that the FMLA may apply.

Further, although we found that Poff provided sufficient notice on July 25, 2013, that she was requesting FMLA leave, we also found that, even assuming otherwise, PrimeCare was nevertheless on notice before it fired Poff that she was requesting FMLA for the July 25th absence.   This finding was based on Dr. Spagnola's certification form, which is reasonably read to cover July 25th, and a meeting held before Poff was terminated where Mike Baldwin was informed that Poff had submitted FMLA paperwork.   Futher, there were email discussions by PrimeCare employees about Poff's FMLA paperwork before her termination. While PrimeCare disagrees with the Court's findings, that is not a basis for granting either a Rule 52(b) or a Rule 59(a)(2) motion.

Contending that it acted in good faith and it reasonably believed that Poff did not provide timely notice of her need for FMLA leave, PrimeCare also requests that the court amend its findings of fact and conclusions of law and amend the judgment by removing the award of liquidated damages.   After considering the evidence presented at trial, we found that PrimeCare did not meet its burden of showing that it acted in good faith and that it had reasonable grounds for terminating Poff despite her request for FMLA leave.   This finding was based in part on PrimeCare's misreading of Dr. Spagnola's medical certification form and its failure to investigate whether Poff's termination would run afoul of the FMLA.   Again, PrimeCare's disagreement with the Court's findings and conclusions is not a basis for granting a Rule 52(b) or a Rule 59(a)(2) motion.

Considering PrimeCare's arguments, we conclude that the Court's findings were not plainly in error or manifestly erroneous, and there is no sound reason to amend its findings or its judgment.   Accordingly, we will deny PrimeCare's motion.

## IV.   Poff's Motion for Attorneys' Fees and Costs.

Under the FMLA, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. *See* 29 U.S.C.A. § 2617(a)(3) ("The court in such an action shall,

in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."). Poff seeks attorneys' fees and costs, and while PrimeCare does not dispute that Poff is entitled to reasonable attorneys' fees and costs, it disputes the amount of those fees and costs.

"In general, a reasonable fee is one which is 'adequate to attract competent counsel, but which do[es] not produce windfalls to attorneys.'" *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (quoting *Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1448 (3d Cir. 1988)). The lodestar is the starting point for the determination of reasonable attorneys' fees in statutory fee cases. *E.E.O.C. v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 721 (M.D. Pa. 2005). The lodestar is the "product of the hours reasonably expended and the applicable hourly rate for the legal services." *Windall,* 51 F.3d at 1185. "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

The prevailing party bears the initial burden of demonstrating that the requested fees are reasonable. *Walker v. Gruver*, No. 1:11-CV-1223, 2013 WL 5947623, at *2 (M.D. Pa. Nov. 5, 2013).   "To meet this burden," the prevailing party "must 'submit evidence supporting the hours worked and the rates claimed.'" *E.E.O.C.*, 537 F. Supp. 2d at 721 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).   "The party opposing the fee award then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief with sufficient specificity to give the fee applicant notice of the objection." *Id.*   The Court may not *sua sponte* reduce the fee requested. *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211 (3d Cir. 2000).   Thus, the Court "may not 'decrease a fee award based on factors not raised at all by an adverse party.'" *Id.* at 212 (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).   But "once the opposing party has made a sufficiently specific objection to the substance of a fee request, 'the court has a great deal of discretion to adjust the fee award in light of these objections.'" *Id.* (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989)).

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.   "Many fee applications are decided on the

basis of affidavits without the need for a hearing." *Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3d Cir. 1987).   We are required to hold a hearing only when we "cannot fairly decide disputed questions of fact without it." *Id*.   Here, because neither party has requested a hearing and because we conclude that we can fairly decide the issues on the basis of the current record, we will not hold a hearing.

### A.   Hourly Rate.

Poff seeks $325 an hour for both Weisburg and Cummings.   PrimeCare contends, however, that the rate for Weisburg and Cummings should be $275 an hour.

With limited exceptions, not relevant here, attorneys' fees are set by using the prevailing rate in the forum of the litigation. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005).   The forum of the litigation has been variously defined as the vicinage of the district in which the litigation occurred, *Beattie v. Line Mountain Sch. Dist.*, No. 4:13-CV-02655, 2014 WL 3400975, at *9 (M.D. Pa. July 10, 2014), or the district in which the litigation occurred, *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:02-CV-0134, 2014 WL 2860863, at *11 (M.D. Pa. June 23, 2014).   "[T]o determine 'the prevailing market rates in the relevant community,' a court must

'assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Interfaith Cmty. Org.*, 426 F.3d at 708 (quoting *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)).

"The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). "Once the plaintiff has made the prima facie showing with respect to the appropriate hourly rate, that rate may be contested, 'but only with appropriate record evidence.'" *Evans v. Port Auth. of New York & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001) (quoting *Smith,* 107 F.3d at 225). If the moving party makes out a prima facie case and the opposing party does not contest that rate with record evidence, the court must award attorneys' fees at the requested rate. *Id.*

Poff submits declarations from her attorneys, Larry Weisberg and Derrek Cummings, who state that they are 1999 graduates of Widener University School of Law (Harrisburg Campus); that they are admitted to practice before the

Supreme Court of Pennsylvania, the United States District Courts for the Middle,

Eastern, and Western Districts of Pennsylvania, and the United States Third

Circuit Court of Appeals; and that they are founders and shareholders of

McCarthy Weisberg Cummings, P.C. *Docs. 47-1* and *47-2* at ¶¶1 & 3-4.

Weisberg is also a member of the Pennsylvania Bar Association and a Council

Member of the Labor and Employment Law Section. *Doc. 47-1* at ¶5.   Since the

inception of McCarthy Weisberg Cummings, P.C. in 2006, the majority of

Weisberg and Cummings's practice has been concentrated in labor and

employment law, advising and representing primarily employees in labor and

employment disputes. *Docs. 47-1* at ¶6 and *47-2* at ¶5.   Weisberg also

occasionally represents employers in labor and employment disputes. *Doc. 47-1*

at ¶6.   According to Weisberg and Cummings, they have experience litigating

employment cases throughout Pennsylvania, including practicing in front of the

Pennsylvania Human Relations Commission, the Equal Employment Opportunity

Commission, and state and federal courts. *Doc. 47-1* at ¶7 and *47-2* at ¶6.

Weisberg also serves as a pro bono mediator for the Equal Employment

Opportunity Commission. *Doc. 47-1* at ¶7.   Weisberg and Cummings assert that

they have prosecuted, in all three districts of Pennsylvania, many employment

and labor law cases that were amicably resolved prior to trial. *Doc. 47-1* at ¶9 and *47-2* at ¶9.

Many of the cases Weisberg and Cummings take are on a contingency basis, and in some cases they receive no compensation at all. *Doc. 47-1* at ¶8 and *47-2* at ¶7.   Nevertheless, they contend that they have gained relevant experience from those matters. *Doc. 47-1* at ¶8 and *47-2* at ¶7

Weisberg and Cummings both state that they are personally responsible for the filing of the complaint in this case and the conduct of the case through all of the proceedings before the Court. *Docs. 47-1* and *47-2* at ¶2.   Both are seeking an hourly rate of $325.00. *Doc. 47-1* at ¶10 and *47-2* at ¶9.   They state that they keep contemporaneous time records of the hours spent on contingency cases, and they attach time sheets for this case. *Doc. 47-1* at ¶10 and *47-2* at ¶9.   Weisberg asserts that he spent 303.3 hours on this case, and Cummings asserts that he spent 30 hours. *Doc. 47-1* at ¶10 and *47-2* at ¶9.[1]

According to Weisberg and Cummings, they are familiar with the hourly rates charged by and awarded to attorneys in and around Dauphin County for work performed there, and they both opine that, in their experience, $325 an hour

---

[1] As set forth later, in connection with her reply brief, Poff submitted amended time sheets that set forth additional hours for Weisberg.

for lead counsel is conservative and reasonable and that the amount of time reflected on their time sheets is also reasonable. *Doc. 47-1* at ¶11 and *47-2* at ¶10. Weisberg also states that he is seeking reimbursement for costs of $6,284.04, and he attaches a cost sheet. *Doc. 47-1* at ¶12.

In addition to the declarations of Weisberg and Cummings, Poff also submitted declarations from two other attorneys: Solomon Z. Krevsky, Esquire and Lori K. Serratelli, Esquire.   Krevsky, who began practicing law in 1994, and Serratelli, who began practicing in 1978, outline their qualifications and experience in employment law. *Doc. 47-5* at ¶¶2-7 and *Doc. 47-6* at ¶¶2-7. According to Krevsky and Serratelli, their customary billing rate is $300 an hour for litigation, but they do perform work at higher or lower rates depending on the complexity of the case and the economic circumstances of the client, and they also do a substantial amount of contingency-fee work. *Doc. 47-5* at ¶10 and *Doc. 47-6* at ¶8.   Both state that they are aware that in 2014, Judge Brann awarded $325 an hour to a prevailing plaintiff in a 42 U.S.C. § 1983 civil-rights case—*Beattie v. Line Mountain Sch. Dist.*, No. 4:13-CV-02655, 2014 WL 3400975 (M.D. Pa. July 10, 2014). *Id.*

Krevsky and Serratelli state that they have reviewed Weisberg and Cummings's Curriculum Vitae as well as the pleadings and the Court's opinion in this case. *Doc. 47-5* at ¶11 and *Doc. 47-6* at ¶9.   Krevsky has known Weisberg and Cummings for many years and he litigated matters against their firm in federal court. *Doc. 47-5* at ¶11.   Serratelli has known Weisberg personally and Cummings by reputation for many years and she litigated a matter against their firm in federal court. *Doc. 47-6* at ¶9.   Krevsky and Serratelli both state that Weisberg and Cummings are highly accomplished attorneys with over 16 years of experience and are highly respected in the legal community. *Doc. 47-5* at ¶11 and *Doc. 47-6* at ¶9.   Krevsky and Serratelli have both referred cases to Weisberg and Cummings's firm. *Id.*   Krevsky routinely refers matters to their firm because of their expertise, and he knows them to be greatly respected in the employment-law bar. *Doc. 47-5* at ¶11.   Serratelli regularly refers matters to their firm because of their expertise, and she respects their knowledge, expertise, and willingness to advocate for the rights of their clients. *Doc. 47-6* at ¶9.

According to Krevsky and Serratelli, employment-law litigation requires specialized skills and is a complex area of practice, and attorneys who represent individuals in employment matters rightfully command a higher hourly rate than

those in general practice or other areas of practice. *Doc. 47-5* at ¶12 and *Doc. 47-6* at ¶10.   Both state that based on their experience litigating employment cases, their familiarity with the hourly rates charged by attorneys in Central Pennsylvania, and their understanding of Weisberg and Cummings's experience, an hourly rate of $325 for Weisberg and Cummings is reasonable and consistent with the current market rate for plaintiffs' attorneys in employment law and wage-and-hour cases. *Doc. 47-5* at ¶13 and *Doc. 47-6* at ¶11.   Serrratelli adds that this is especially so in light of Judge Brann's decision in *Beattie*. *Doc. 47-6* at ¶11.

PrimeCare does not agree that the prevailing rate for Weisberg and Cummings is $325 an hour; rather, it contends that the appropriate rate is $275 an hour.   PrimeCare asserts that Poff has failed to establish a prima facie case that Weisberg and Cummings are entitled to $325 an hour because the declarations from Krevsky and Serratelli, who have considerably more experience litigating employment-related cases than Weisberg and Cummings, show that their customary rate is only $300 an hour, whereas Weisburg and Cumming, who have less experience litigating employment related cases, are seeking $325 an hour. According to PrimeCare, because Weisburg and Cummings do not have the same

15

experience and reputation as Krevesky and Serratelli, they do not warrant a higher rate than Krevesky and Serratelli or even Krevesky and Serratelli's normal billing rate of $300 an hour.

Comparing the hourly rate requested for Weisberg and Cummings to the normal billing rate of Krevesky and Serratelli leads us to conclude that the $325 an hour requested in this case is too high.   Further, while Krevesky and Serratelli assert that an hourly rate of $325 for Weisberg and Cummings is reasonable and consistent with the current market rate for plaintiffs' attorneys in employment law and wage-and-hour cases, they do not explain why Weisberg and Cummings should command a higher rate than their own customary billing rate.   Both, however, mention Judge Brann's decision in *Beattie,* 2014 WL 3400975, where Judge Brann found that a reasonable rate for Attorney Abbe Fletman, a partner with Flaster Greenberg PC, was $325 an hour in a civil-rights case challenging a school district's policy prohibiting female students from participating in the junior high and high school wrestling teams.   But Poff does not demonstrate that Weisberg and Cummings's experience or services in this case are similar to the experience and services of Attorney Fletman in *Beattie*.[2]   Moreover, "hourly

---

[2]  Poff also points to *Broadcast Music, Inc. v. Shane's Flight Deck, Ltd.*, No.

rates that were set for a specific attorney in previous court decisions do not

generally constitute record evidence, unless those rates were set for the same

attorney and for the same type of work over a contemporaneous time period."

*Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012) (citation

omitted).   Thus, we conclude that Poff has not established a prima facie case that

the prevailing market rate for Weisburg and Cummings is $325 an hour. *See id*. at

238 (holding that attorney failed to establish prima facie case where another

attorney, who provided an affidavit in support of the requesting attorney, charged

comparable rates but had at least 15-years more experience than the requesting

attorney).

Since we conclude that $325 an hour is not reasonable for Weisberg and

Cummings in this case, we must set a reasonable hourly rate.   In arguing that $275

an hour is the appropriate rate, PrimeCare points to a declaration, dated March 7,

2014, submitted by Frank L. Lavery, Jr. Esquire, in the *Beattie* case, in which

Lavery, who has been an attorney for 28 years, asserts that his hourly rate for

---

1:09-CV-2151, 2010 WL 4916208, at *1 n.3 (M.D. Pa. Nov. 24, 2010), where Chief
Judge Conner awarded an attorney an hourly rate of $450.   But that case was a
copyright case, and Poff has not presented any evidence or even suggested that the
market rate for intellectual-property lawyers is the same as for employment lawyers.

litigation in the Middle District of Pennsylvania is $275 an hour and that the

prevailing hourly rate for a skilled attorney to provide competent legal services in

that case was in the range of $250 to $275 an hour for a partner and $150 to $175 an

hour for an associate. *See Doc. 56-7.* PrimeCare also points to a number of cases

from this district where counsel were awarded fees in the range of $275 an hour. *See*

*Dino v. Pennsylvania*, No. 1:08-CV-01493, 2013 WL 6504749, at *3 (M.D. Pa. Dec.

11, 2013) (Kane, J.) (concluding in a Fair Labor Standards Act case that $285 per

hour for an attorney with 32 years of experience was reasonable for various reasons

including that there was no objection to the fee); *Shaw v. Cumberland Truck Equip.*

*Co.*, No. CIV.A. 09-359, 2012 WL 1130605, at *3 (M.D. Pa. Mar. 30, 2012)

(Conner, C.J.) (concluding that in an Americans with Disabilities Act case, $275 an

hour was a reasonable rate for two of the plaintiff's attorneys, one of which was

Attorney Crocenzi, who is defense counsel in this case); *Atwell v. SPX Cooling*

*Techs., Inc.*, No. 1:10-CV-1271, 2011 WL 4807758, at *2 (M.D. Pa. Oct. 11, 2011)

(Conner, C.J.) (concluding in a case involving discovery sanctions that a rate of

$275 per hour was reasonable for an attorney with 17 years of experience focusing

primarily on civil litigation, including the defense of employment related claims,

$230 per hour was reasonable for an attorney with 20 years of experience as a trial

18

attorney, and $200 per hour was reasonable for an attorney with 10 years of experience as a trial attorney); *O'Quinn v. Recovery Partners*, No. 1:10-CV-2361, 2011 WL 2971795, at *2 (M.D. Pa. July 21, 2011) (Kane, J.) (awarding counsel fees of $250 per hour in a Fair Debt Collection Practices Act case where a default judgment was entered in favor of the plaintiff and characterizing that award as "both reasonable and generous").   Other, more recent cases, however, have set higher rates. *See Romeo v. Simm Associates, Inc.*, No. 3:15-CV-2136, 2016 WL 1070827, at *1 (M.D. Pa. Mar. 16, 2016) (awarding $375.00 per hour in a Fair Debt Collection Practices Act case in Scranton for an attorney with 16 years of experience and who specializes in consumer protection law); *Evankavitch v. Green Tree Servicing, LLC*, No. 3:12CV2564, 2014 WL 4437645, at *2 (M.D. Pa. Sept. 9, 2014) (awarding $315 per hour to lead counsel in a Fair Debt Collection Practices Act case in Scranton where the hourly rate was not contested); *J.S. ex rel. Snyder v. Blue Mountain Sch. Dist.*, No. 3:07CV585, 2014 WL 1321116, at *7 (M.D. Pa. Mar. 31, 2014) (awarding $300 per hour in a civil-rights case for two attorneys with extensive experience in civil-rights litigation and awarding $250 per hour for an attorney with less experience based on rates in the Scranton/Wilkes-Barre area).

Although "past rates are not necessarily reflective of the 'current' market rate," *Souryavong v. Lackawanna Cty.*, No. 13-CV-1534, 2016 WL 374462, at *11 (M.D. Pa. Feb. 1, 2016), or of the rate that should be set in this case, considering all the evidence in this case, we conclude that a reasonable market rate for Weisberg and Cummings in this case is $300 an hour.   Krevesky and Serratelli's customary rate is $300 an hour, and although Weisberg and Cummings have less experience than Krevesky and Serratelli, both Krevesky and Serratelli affirm that they charge more than $300 per hour in certain cases.   Both Krevesky and Serratelli also assert that employment law requires specialized skill and is a complex practice area. Further, both state that an hourly rate of $325 for Weisberg and Cummings is reasonable and consistent with the current market rates for plaintiffs' attorneys in employment law and wage-and-hour cases, and while we conclude that Weisberg and Cummings are not entitled to $325 an hour, if $325 is consistent with market rates, so is $300 an hour.   Considering the skill, experience, and reputation of Weisberg and Cummings, we conclude that $300 an hour is the prevailing market rate for this case.

**B.   Hours Expended.**

"A prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must 'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.'" *Interfaith Cmty. Org.* 426 F.3d at 711 (quoting *Windall*, 51 F.3d at 1188).   Once the opposing party has made a specific objection, the prevailing party has the burden of justifying its request. *Id*.   And the court "must conduct a 'thorough and searching analysis' to identify" charges that are excessive, redundant, or unnecessary. *Id*. (quoting *Evans*, 273 F.3d at 362).   To determine whether the prevailing party has met its burden, we must "'go line, by line, by line' through the billing records supporting the fee request." *Id*. at 713 (quoting *Evans*, 273 F.3d at 362).

**1.   Cummings.**

PrimeCare objects to the 5.5 hours sought by Cummings for reviewing the motion for summary judgment, the motion in limine, and the proposed findings of fact and conclusions of law.   According to PrimeCare, given that Weisberg and

Cummings represent that they are experienced attorneys in employment-law matters, it is unreasonable to make it pay for Cummings's review of Weisberg's work.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his" or her bill to a client. *Hensley*, 461 U.S. at 434.   In other words, "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id*. (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc)) (emphasis in original).

An attorney is not entitled to recover for work that duplicates the work of another attorney.   "A reduction for duplication 'is warranted only if the attorneys are *unreasonably* doing the *same* work.'" *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990) (quoting *Jean v. Nelson,* 863 F.2d 759, 773 (11th Cir.1988)). "'[P]articipation of more than one attorney does not necessarily amount to unnecessary duplication of effort," and "[c]ourts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Muegge v. Aqua Hotels & Resorts,*

*Inc.*, No. CIV. 09-00614 LEK, 2015 WL 4041313, at *7 (D. Haw. June 30, 2015)

(quoting *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286

(9th Cir. 2004)).

"Two experienced attorneys with self-asserted expertise in [the applicable]

area of law need not extensively review one another's work, as skilled counsel

should handle complicated tasks on her own." *Beattie,* 2014 WL 3400975, at *4.

But "some level of review" may be warranted, *id.*, and "[i]t is a reasonable and well

accepted way to practice law for attorneys to seek advice from their colleagues."

*Apple Corps. Ltd. v. Int'l Collectors Soc.*, 25 F. Supp. 2d 480, 489-90 (D.N.J. 1998).

Here, the amount of time Cummings spent reviewing the motion for summary

judgment, the motion in limine,[3] and the proposed findings of fact and conclusions

of law was not excessive and was reasonable under the circumstances of this case.

Thus, we will allow the 5.5 hours at issue.

PrimeCare also objects to the 24 hours sought by Cummings for discussing

litigation strategy, for trial preparation, and for attendance at trial.   According to

PrimeCare, because Cummings did not play a meaningful role in the trial—he did

---

[3] We assume that in reviewing the motion for summary judgment and motion in limine, Cummings reviewed the briefs and supporting documents, not just the motions themselves.

not provide any argument to the court, examine any witnesses, or submit any evidence for admission—his work regarding the trial was redundant of that of Weisberg.   According to Poff, however, Cummings participated significantly in the litigation strategy, including determining which witnesses to call, which witnesses to cross-examine, which questions to ask on cross-examination and redirect, and which trial strategy to employ at any given time.

Of the 24 hours sought by Cummings for discussing litigation strategy, for trial preparation, and for attendance at trial, 2.25 were for discussing litigation strategy with Weisburg.   It was reasonable for Weisburg and Cummings to discuss trial strategy, and thus we will allow those 2.25 hours.   An additional 7.75 hours were for Cummings preparing for trial, meeting with the client, and telephone calls with a consulting expert.   As it is not unreasonable or duplicative for Cummings to handle certain tasks in preparation for the trial, we will also allow those hours.

The more difficult question is whether PrimeCare should have to pay for Cummings attending trial given that he did not question witnesses or present evidence or argument.   Poff initially sought 14 hours for Cumming's attendance at trial.   In response to PrimeCare pointing out that the trial did not last the

amount of time initially set forth in Weisberg and Cummings's time sheets, Poff

submitted amended time sheets, which set forth that Cummings attended trial on

May 4, 2015, for 7 hours, on May 5, 2015, for 2.5 hours, and on May 6, 2015, for

2 hours, for a total of 11.5 hours.   The amended time sheets account for the

additional 2.5 hours requested for trial as one hour for trial preparation on May 4,

2015, before the trial started, and 1.5 hours on May 5, 2015, before trial started on

that day.[4]   We again find that it was reasonable for Cummings to assist with trial

preparation.   Thus, we will allow the 2.5 hours for that.   That leaves only 11.5

hours for Cummings's actual attendance at trial.

   "'[P]revailing parties are not barred as a matter of law from receiving fees

for sending a second attorney to depositions or an extra lawyer into court to

observe and assist.'" *Gentner v. Cheyney Univ. of Pennsylvania*, No. CIV. A.

94-7443, 1999 WL 993999, at *6-7 (E.D. Pa. Nov. 2, 1999) (quoting *New York

State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir. 1983)).

"Indeed, the use of a second attorney 'may be essential for planning strategy,

eliciting testimony or evaluating facts or law.'" *Id*. (quoting *Williamsburg Fair*

---

4  Poff submitted the amended time sheets in connection with her reply brief.   As
PrimeCare did not request leave to file a surreply brief to address the amended time
sheets, we accept the amended time sheets.

25

*Housing Comm. v. Ross–Rodney Housing Corp.,* 599 F.Supp. 509, 518 (S.D.N.Y. 1984)).   When it is "reasonable and necessary" for a second attorney to attend a proceeding, the prevailing party may recover fees for that attorney. *Muegge,* 2015 WL 4041313, at *7.   And in some cases, courts have found two attorneys at trial to be reasonably necessary. *See e.g. Custom Homes by Via LLC v. Bank of Oklahoma*, No. CV-12-01017-PHX-FJM, 2014 WL 2778822, at *2 (D. Ariz. June 19, 2014) (stating that "[i]t is not unreasonable to have a second counsel at trial" and rejecting argument that fees incurred for an attorney's attendance at trial were duplicative and excessive because he did not speak or enter an appearance); *aff'd*, No. 14-15011, 2016 WL 683160 (9th Cir. Feb. 18, 2016); *Wallis v. BNSF Ry. Co.*, No. C13-40 TSZ, 2014 WL 1648472, at *4 (W.D. Wash. Apr. 23, 2014) (finding the presence of two attorneys at trial to be reasonably necessary given the nature and complexity of the case and declining to reduce hours); *Buffinton v. PEC Mgmt. II, LLP*, No. 1:11-CV-229 ERIE, 2014 WL 670854, at *10 (W.D. Pa. Feb. 20, 2014) (stating that it is not uncommon for counsel to have a second-chair attorney during litigation and refusing to reduce hours for second attorney at trial).

But a court may find the hours spent by a second attorney to be duplicative and, thus, non-reimbursable.   And the Third Circuit has suggested that even when the presence of two attorneys is reasonable, in straightforward cases, both attorneys should not bill at partner rates:

> These instances of precise overlap in both time and task cause us to conclude that the time claimed is not reasonable for the services performed.   "Given [these attorneys'] professed expertise . . . , it would not have been unreasonable to expect" that one of them would have been able to handle most aspects of this matter, *including* the trial "alone or with the help of an associate." *Lanni v. New Jersey,* 259 F.3d 146, 151 (3d Cir.2001).   For those tasks where it is abundantly clear that the time of two attorneys was reasonably required, we have suggested that "awarding fees for [one partner's] time multiplied by an associate's rate may be justifiable." *Id.*   Given the fairly straightforward nature of this case, we anticipate that the District Court will find that few tasks required the full participation of both attorneys.

*Evans*, 273 F.3d at 362.   And courts in this Circuit often disallow or reduce the rates or hours of attorneys when multiple attorneys appear at trial or other proceedings.   *See e.g. Beattie,* 2014 WL 3400975, at *5 (finding that specific attorney's presence at a preliminary injunction hearing was unnecessary and that she should not be compensated for that time)*; Arlington Indus., Inc. v. Bridgeport Fittings, Inc.,* No. 3:02-CV-0134, 2014 WL 2860863, at *8 (M.D. Pa. June 23, 2014) (finding that having three attorneys present for a contempt hearing and each billing full time was

27

redundant and, therefore, reducing by half the amount of time billed by two of the

attorneys), *amended by* 2014 WL 2991813, at *1 (M.D. Pa. July 2, 2014);

*D'Orazio v. Washington Twp.*, No. CIV.A. 07-5097 JEI, 2011 WL 6717427, at *6

(D.N.J. Dec. 21, 2011) (concluding that because each attorney had over twenty years

of experience, attendance by both at depositions and mediation was unreasonable

and reducing hours for duplicative work), *aff'd in part and remanded in part (on*

*other grounds),* 501 F. App'x 185 (3d Cir. 2012); *Gonzalez v. Bustleton Servs., Inc.*,

No. CIV.A. 08-4703, 2010 WL 3282623, at *2 (E.D. Pa. Aug. 18, 2010) (finding the

use of two attorneys at trial reasonable but reducing the rate of the second attorney

by $50 an hour); *Posa v. City of E. Orange*, No. CIV. 03-233(FSH), 2005 WL

2205786, at *5 (D.N.J. Sept. 8, 2005) (reducing rate for second attorney at trial to

that of the rate for an experienced litigation paralegal).   It is within the Court's

discretion to reduce redundant hours. *Glover v. Johnson*, 138 F.3d 229, 252 (6th Cir.

1998).

   This was not such a complex case that two attorneys were necessarily

required.   But neither was it such an easy case that two attorneys at trial were

necessarily unreasonable.   Thus, we reject PrimeCare's invitation to reject all of

Cummings hours involving the trial.   The question, however, is whether

Cummings is entitled to $300 an hour for all his hours as second chair at trial.

We conclude that some reduction is warranted given his lack of active

participation in the trial.    Thus, we will reduce his hours for attending trial by

50% to reflect his limited role as second chair.    Accordingly, we will disallow

5.75 hours to Cummings for acting as second chair at trial.


### 2.    Weisberg.

PrimeCare contends that Weisberg seeks an excessive number of hours for

depositions, for work in connection with the motion in limine, for preparing

subpoenas, and for attending trial.    "[H]ours are excessive if they represent more

time than is reasonably necessary to complete the task." *Rode*, 892 F.2d at 1192.

Further, "[a] fee applicant cannot demand a high hourly rate—which is based on

his or her experience, reputation, and a presumed familiarity with the applicable

law—and then run up an inordinate amount of time researching that same law."

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983).


### a.    Depositions.

PrimeCare points out that although Weisberg billed for 3.25 hours for

Rhiannon Missimer's deposition, according to the transcript, that deposition,

which was held at Weisberg's office, lasted only 48 minutes.   Thus, according to

PrimeCare, Weisberg should be compensated for only one hour for the Missimer

deposition.   Similarly, PrimeCare asserts that although Weisberg billed for 1.8

hours for the deposition of Jennifer Bliss, that deposition, which was held at

defense counsel's office in Harrisburg, lasted only 31 minutes.   Thus, according

to PrimeCare, Weisberg should be compensated for only .5 hours for the Bliss

deposition.   PrimeCare also contends that although Weisberg billed for 3.6 hours

for attending Dr. Spagnola's deposition, that deposition, which occurred in York,

lasted only 46 minutes.   Thus, according to PrimeCare, Weisberg should be

compensated for only one hour for Dr. Spagnola's deposition.   Further,

according to PrimeCare, if Weisberg is billing for his travel time from Harrisburg

to York, it does not take 2.6 hours to travel round trip between Harrisburg and

York.   Moreover, PrimeCare asserts that if travel time is awarded, it should only

be awarded at 50% of Weisberg's hourly rate.

Poff responds by submitting updated time sheets, which for the Missimer

deposition, lists one hour for July 15, 2014, and contains an additional entry of

2.25 hours for Weisberg to prepare for the Missimer deposition.   Although Poff

suggests in her brief that this 2.25 hours of preparation occurred on July 15, 2014,

the updated time sheets list it under July 14, 2014, even though there is already another entry of 1.8 hours on July 14, 2014, for preparation for the Missimer deposition. *See Doc. 57-1* at 2.   In light of the duplicative entry for preparing for the Missimer deposition, we will disallow the 2.25 hours belatedly set out on the updated time sheet.

Whereas the original time sheets listed 1.8 hours on September 19, 2014, to attend depositions (which we know from the briefs is for the Bliss deposition), the updated time sheets list .5 hours for the deposition and 1.3 hours on September 19th for Weisberg to prepare for the deposition.   This is in spite of the fact that 1.25 hours is listed on September 18, 2014, to prepare for the deposition.   Thus, Weisberg is seeking 2.55 hours to prepare for a deposition that took only 31 minutes to complete.   For a witness who did not testify at trial and whose deposition was not used in connection with the motion for summary judgment, this is excessive, and so we will disallow the 1.3 hours belatedly set forth in the updated time sheets.

As for Dr. Spagnola's deposition, whereas the original time sheets listed 3.6 hours for August 13, 2014, for Dr. Spagnola's deposition, the updated time sheets now lists one hour for Dr. Spagnola's deposition, 1.5 hours for round-trip

travel for the deposition, and 1.1 hours on August 13, 2014, for Weisberg to prepare for the deposition.   Both the original and updated time sheets also list 2.8 hours on August 12, 2014, for Weisberg to prepare for Dr. Spagnola's deposition. Given the importance of Dr. Spagnola to the case, we conclude that the preparation time for his deposition was reasonable.

That leaves the 1.5 hours for travel to and from Dr. Spagnola's deposition. Travel time is "generally recoverable 'when it is the custom of attorneys in the local community to bill their clients separately for [it].'" *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002) (quoting *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir.1995)).

Citing *Supinski v. United Parcel Serv., Inc.*, No. 3:06-CV-00793, 2012 WL 2905458, at *3 (M.D. Pa. July 16, 2012) (recognizing that "[t]o determine whether an attorney may be compensated for travel time, the Court must look at the practice of the local community"; concluding that plaintiff did not establish that the practice in the local community is to bill clients full rate for travel time; thus, reducing time billed for travel by 50%), PrimeCare contends that travel time should only be compensated at 50% of Weisberg's hourly rate.   Weisberg responds by citing several cases from the Eastern District of Pennsylvania finding

that travel time is fully compensable. *See Steward v. Sears, Roebuck & Co.*, No. CIV.A. 02-8921, 2008 WL 1899995, at *6 (E.D. Pa. Apr. 29, 2008) (citing cases for the proposition that courts have reimbursed attorneys at both their full rates and reduced rates for travel time, "[f]inding that an attorney loses the opportunity to meet with other clients or perform other legal work when engaged in travel necessary to the case," and, thus, allowing reimbursement for travel time at counsel's full hourly rate); *Arietta v. City of Allentown*, No. 04-CV-00226, 2006 WL 2850571, at *5 (E.D. Pa. Sept. 29, 2006) (same); *Rush v. Scott Specialty Gases, Inc.*, 934 F. Supp. 152, 156 (E.D. Pa. 1996) (concluding that "the attorney loses opportunity time by traveling to trial and should be compensated for that time as much as time spent otherwise on the client" and noting that "one of Plaintiff's counsel has submitted an affidavit that she spent her commuting time working on Plaintiff's file"), *clarified on other grounds*, 940 F. Supp. 814, 816 (E.D. Pa. 1996).

As Poff has not established what the custom is in this area regarding attorneys billing clients for travel, we will reduce Weisberg's travel time by 50%. *See Supinski*, 2012 WL 2905458, at *3.   This can be expressed as either a 50% reduction in the hourly rate ($300 ÷ 2 = $150) for 1.5 hours ($150 x 1.5 = $225)

or as a 50% reduction in the hours ($1.5 \div 2 = .75$) for the full hourly rate ($.75$ x

$300 = 225$).   In order to simplify the final lodestar calculation, we will express

it as a 50% reduction in hours.   Thus, we disallow .75 hours for travel time for the

deposition.

### b.   Motion in Limine.

PrimeCare contends that the 11.9 hours that Weisberg spent on the motion

in limine in this case was excessive, and it requests that the time be roughly cut in

half to 5.9 hours.   Considering the nature of the motion, which sought to preclude

PrimeCare's vocational expert from testifying at trial, the time Weisberg spent

researching and working on the motion and brief was not excessive, and we will

allow that time, which amounts to 11.4 hours.

Weisberg billed for an additional .5 hours for filing the motion in limine.

PrimeCare contends that that time is not recoverable since it is clerical work.   "It

is well-established that time expended to perform clerical work is not recoverable,

especially at an experienced attorney's high hourly rate or even paralegal rates."

*Walker*, 2013 WL 5947623, at *14.   "Clerical work is instead considered to be

part of an attorney's hourly rate as office overhead." *Id*.   And actually filing a

document with the court is clerical work. *See Slantis v. Capozzi & Associates,*

34

*P.C.*, No. 1:09-CV-049, 2011 WL 2531752, at *5 (M.D. Pa. June 24, 2011)

(concluding that the filing of the complaint and the summons are clerical tasks).

Accordingly, we will not award the .5 hours Weisberg spent filing the motion in

limine.

### c. Subpoenas.

PrimeCare objects to the 2.5 hours that Weisberg billed for April 17, 2015, for

"Trial prep; prepare subpoenas; s/w with union counsel re: subpoenas" contending

that preparing subpoenas is clerical work that should not be compensated.   In

response, Poff submitted updated time sheets that, for April 17, 2015, list 1.25 hours

for trial prep, .75 hours to prepare subpoenas, and .5 hours for "s/w union counsel re:

subpoenas." *Doc. 57-1* at 4.   We do not find these times either unreasonable or

excessive. *See generally Smith v. Borough of Dunmore*, No. CIV A 3:05-CV-1343,

2008 WL 4542246, at *7 (M.D. Pa. Oct. 9, 2008) (allowing time for preparation of

subpoenas).   Accordingly, we will allow them.

### d. Trial.

PrimeCare contends that the time Weisberg billed for attending the first two

days of trial is excessive.   Weisberg initially sought 10 hours for the first day of trial

and 4.5 hours for the second day. *Doc. 47-3* at 3.   After PrimeCare pointed out that

the first day of trial lasted only approximately 7 hours and second day only 2.5

hours, Poff responded by submitting updated time sheets breaking up the entry for

10 hours for the first day of trial into seven hours for the trial and three hours for

Weisberg to prepare for the trial before it began. *Doc. 57-1* at 4.   Similarly, for the

second day, Poff broke up the initially requested 4.5 hours into 2.5 hours for trial and

two hours for Weisberg to prepare for trial. *Id.*   Considering that Weisberg was well

prepared for trial, we do not find these times excessive or unreasonable, and so we

will allow them.

### e.   Fee Petition and Other Post-Trial Matters.

We note that in the initial time sheets, Poff sought 6.50 hours for Weisberg to

research, work on, and discuss the fee petition with opposing counsel and .5 hours

for Cummings to work on the fee petition. *Doc. 47-3*.   PrimeCare did not object to

that time.   In the updated time sheets, Poff seeks an additional 6 hours for

Weisberg's work in connection with the fee petition (1 hour to read PrimeCare's

brief in opposition and begin research, 2.75 hours for legal research and work on the

reply brief, and 2.25 hours to work on and finalize the reply brief). *Doc. 57-1*.

Additionally, Poff seeks an additional 3.48 hours for Weisberg's work on other

36

various post-trial matters such as phone calls with defense counsel, phone calls with

Poff, and a conference with the court. *Id.*   As PrimeCare has not sought leave to file

a surreply brief to address the updated time sheets, it has not objected to these hours.

Moreover, we find the hours reasonable, and we will allow them.

### C.   The Lodestar Calculation.

Based on the above, the lodestar calculation for Weisberg is $90,969 which is

$300 per hour times 303.23 hours.[5]   And the lodestar calculation for Cummings is

$7,275, which is $300 per hour times 24.25 hours.[6]   Thus, the total lodestar is

$98,244.

---

[5]  Although the updated time sheets list a total of 312.78 hours for Weisberg, the actual items listed total only 308.03 hours.   The 303.23 hours in the lodestar calculation is 308.03 less the 4.8 hours we disallowed (2.25 for preparation for the Missimer Deposition, 1.3 for preparation for the Bliss deposition, .75 for the reduction in the travel for Dr. Spagnola's deposition, and .5 for filing the motion in limine).

[6]   The 24.25 hours in the lodestar calculation is the 30 hours listed on the updated time sheets minus the 5.75 hours we disallowed in connection with Cummings's attendance at trial.

### D.   Adjustment to the Lodestar.

PrimeCare contends that the lodestar should be reduced by one third because Poff achieved only limited success.

"Although the lodestar is presumed to yield a reasonable fee, it may be reduced to account for 'results obtained.'" *E.E.O.C. v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 729 (M.D. Pa. 2005) (quoting *Hensley*, 461 U.S. at 434).   "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," and the "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435.   "If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id*. at 436.   "[T]he most critical factor is the degree of success obtained." *Id*.   "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Id*. at 440.   "[T]he district court should award only that amount of fees that is reasonable in relation to the results obtained." *Id*.   "There is no precise rule or formula" for determining when or how to adjust a fee for limited success. *Id*. at 436.   "The district court may attempt to identify specific hours that

should be eliminated, or it may simply reduce the award to account for the limited success." *Id*. at 436-437.

The "court may not diminish counsel fees . . . to maintain some ratio between the fees and the damages awarded." *Washington v. Philadelphia Cty. Court of Common Pleas*, 89 F.3d 1031, 1041 (3d Cir. 1996).   And that Poff did not recover the full amount of damages sought does not mandate a reduction in the fee award. *Boles v. Wal-Mart Stores, Inc.,* No. 15-3128, 2016 WL 2990406, at *4 (3d Cir. May 24, 2016) (stating that the fact that the award "received was less than desired is not determinative").   But we must consider "the amount of damages awarded as compared to the amount sought." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 585 (1986) (Powell, J. ) (concurring)).

Here, PrimeCare contends that Poff achieved only limited success because she was not awarded front pay.   In this regard, PrimeCare points out that in her pretrial memo, Poff requested $45,313 for lost wages, $4,059.71 for unpaid medical expenses, and front pay of $15,086 per year for 25 years ($377,150), and PrimeCare notes that Poff also requested liquidated damages.[7]   PrimeCare also points to the

---

[7]   PrimeCare asserts that the liquidated damages would have doubled the requested

fact that during the limited discussion about settlement at the pretrial conference, Poff made a vague demand of a six-figure settlement.   PrimeCare asserts, however, that Poff achieved only limited success because she was awarded only $96,848.80[8] of the amount she requested.   Comparing the amount Poff requested to the amount she was awarded, PrimeCare contends that a one-third reduction in the lodestar is appropriate.

Poff counters that she achieved an excellent result, and, therefore, the lodestar should not be reduced.   In this regard, she asserts that other than front pay, she achieved the results she sought.   She also notes that the verdict was higher than any settlement offer by the defendant, and she asserts that she "benefits intangibly from

---

front pay to $754,300.   Poff suggests otherwise, pointing out that the liquidated-damages provision of the FMLA does not provide for liquidated damages with respect equitable relief such as front pay, but it only provides for liquidated damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation" 29 U.S.C.A. § 2617(a)(1)(A)(i)(I) and 2617(a)(1)(A)(iii). *Cf Blum v. Witco Chem. Corp.*, 829 F.2d 367, 383 (3d Cir. 1987) (concluding that "[a] front pay (or, in this case, front benefits) award is the monetary equivalent of the equitable remedy of reinstatement" and declining to extend the liquidated-damages provision of the ADEA to lost future pension benefits).

[8]   Actually, judgment was entered in favor of Poff for $103,606.88, which represented back pay in the amount of $45,313.00, medical expenses in the amount of $3,111.40, liquidated damages in the amount of $48,424.40, and pre-judgment interest in the amount of $6,758.08.

the name-clearing verdict of the Court" that she was not fired for absences that were

not FMLA eligible. *Doc. 47* at 7.   Further, Poff asserts that another measure of

success is the "private attorney general" effect of her claim, and, she asserts, the

verdict sent a strong message to PrimeCare that it must follow the FMLA. *Id.* at 7-8.

Considering that Poff did not prevail on her claim for front pay, which was a

substantial part of the damages she sought, we conclude that her success, while

certainly not *de minimis*, was limited.   Thus, a slight downward adjustment of 10%

of the lodestar is warranted to account for Poff's limited success.   Accordingly,

reducing the lodestar of $98,244 by 10%, yields a lodestar of $88,419.60.


### E.   Costs.

In addition to requesting attorneys' fees, Poff requests costs in the amount of

$6,284.04.   PrimeCare objects to $46.33 Poff's attorneys claimed for meals and

$58.00 in parking fees.   Poff does not respond to those objections.   Accordingly,

we will disallow $104.33, the total costs claimed for meals and parking.

PrimeCare also objects to professional fees for Danmar Associates in the

amount of $2,125.   PrimeCare contends that because no one from Danmar

Associates was listed as an expert, produced a report, or testified at trial,

reimbursement under the FMLA, which allows reimbursement for "reasonable

41

expert witness fees," is not appropriate. *Doc. 56* at 14 (quoting 29 U.S.C.A.

§ 2617(a)(3)).   Poff responds that Danmar Associates conducted a record review

and clinical vocational interview and her counsel consulted with Damar Associates

regarding her economic loss and mitigation efforts, which were critical issues in

connection with the cross-examination of PrimeCare's vocational expert.   Poff

asserts that although the fees for Danmar Associates may not be recoverable as

expert witness fess, they are recoverable as costs.

In sum, we will reduce the requested costs of $6,284.04 by $104.33 (for meals

Under a fee shifting statute, reimbursement of fees of non-testifying experts

may be allowed. *Interfaith Cmty. Org.*, 426 F.3d at 715-717 (affirming district

court's award of fees for non-testifying expert in a case brought pursuant to the

Resource Conservation and Recovery Act, which provides that the court "may

award costs of litigation (including reasonable attorney and expert witness fess)" to

a prevailing party when appropriate).   Thus, PrimeCare's objection based on the

fact that no one from Danmar Associates was listed as or testified as an expert is

without merit, and we will allow the costs for Danmar Associates.

In sum, we will reduce the requested costs of $6,284.04 by $104.33 (for meals

and parking), for a total award of costs of $6,179.71.

## V.   Conclusion.

For the foregoing reasons, we will deny PrimeCare's motion (doc. 58) to amend/correct, and we will grant in part and deny in part Poff's motion (doc. 46) for attorney's fees and costs.   The Clerk will be directed to enter judgment in favor of Poff and against PrimeCare in the amount of $88,419.60 for attorneys' fees and $6,179.71 for costs.   An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge